UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA G., | ) |
|     Plaintiff, | ) No. 21-cv-3732 |
|     v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa G.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 14] is DENIED and Defendant's motion for summary judgment [dkt. 17] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**1. SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). The Court's scope of review here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] The Court has construed "Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision" [dkt. 14] as a motion for summary judgment.

and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted).

**2.     BACKGROUND**

**2.1     Procedural History**

On October 16, 2018, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging disability as of September 27, 2018. (Administrative Record ("R.") 13.) Plaintiff's applications were denied initially and upon reconsideration. *Id*. Plaintiff appealed those denials and requested an Administrative Hearing, which was held telephonically on November 20, 2020. *Id*. On January 28, 2021, the ALJ issued an unfavorable decision, concluding that Plaintiff had not established she was disabled during the period from her onset date through the date of the ALJ's decision. (R. 13-26.) Plaintiff requested and was denied Appeals Council review (R. 1-3), rendering the Decision of the Appeals Council the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

**2.2     The ALJ's Decision**

On January 28, 2021, the ALJ issued her decision, which followed the familiar five-step sequential process for determining disability. (R. 13-26.) At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 15.) At Step 2, the ALJ found Plaintiff had the severe impairments of obesity and degenerative disc disease lumbar

spine. (R. 15-16.) The ALJ determined Plaintiff's generalized anxiety disorder to be a nonsevere impairment. (R. 16-18.) At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 18-19.) Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: occasional climbing of ramps and stairs; occasional stooping, crouching, and crawling; frequent balancing; avoidance of concentrated exposure to workplace hazards such as unprotected heights and moving mechanical parts. (R. 19.) At Step 4, the ALJ found Plaintiff capable of performing her past relevant work as both a Retail Sales Clerk (DOT #290.477-014) and as an Insurance Benefits Clerk (DOT # 205.567-010). (R. 25.) That obviated the need for the ALJ to make a Step 5 determination. Because of these determinations, the ALJ found Plaintiff not disabled under the Act at any time from her alleged onset date through the date of the ALJ's decision (R. 25-26.)

**3.  DISCUSSION**

Plaintiff raises several issues with the ALJ's decision in the instant matter: (1) that the ALJ's mental residual functional capacity finding was erroneous; (2) that the ALJ's physical residual functional capacity finding was erroneous; (3) that the ALJ inappropriately addressed her subjective symptoms; and (4) that the ALJ failed to properly account for her obesity. Plaintiff argues these issues warrant remand. The Court disagrees, as detailed below.

**3.1  Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Mental RFC**

Plaintiff alleges the ALJ improperly found her anxiety nonsevere and then failed to incorporate this nonsevere limitation into the RFC. [Dkt. 14, pp. 5-8.] The Court disagrees.

An ALJ's residual functional capacity ("RFC") finding is an assessment of the most the claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a). "[T]he determination of a

claimant's RFC is a matter for the ALJ alone…to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). Under Social Security Ruling 96-8p, an ALJ's assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence...and set forth a logical explanation of the effects of the symptoms…on the individual's ability to work." SSR 96-8p. Substantial evidence requires only that an ALJ's decision be adequately supported, which can occur even where another position is also supported. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).

With respect to mental impairments, when a mental impairment is found to be a medically determinable impairment, it must be reviewed using "a special technique at each level of the administrative review process." 20 C.F.R. § 404.1520a. This special technique includes rating the degree of limitation in four areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating persisting, and maintaining pace; and (4) adapting or managing oneself. 20 CFR § 404.1520a(c)(3). These are reviewed on a five-point scale: none, mild, moderate, marked, and extreme. 20 CFR § 404.1520a(c)(4). If found to be "none" or "mild," then the ALJ "will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 CFR § 404.1520a(d)(1).

Here, the ALJ evaluated the longitudinal record and sufficiently explained why Plaintiff experienced only "mild" limitations in each functional category. Specifically, in finding only "mild" limitations in Plaintiff's ability to understand, remember, and apply information, the ALJ explained that despite Plaintiff's professed limitations, she was able to manage her money and medications, shop independently, attend doctor appointments, prepare meals, and "do simple and multistep chores around the home such as doing laundry." (R. 16.) Similarly, the ALJ explained that Plaintiff had no limitations in concentrating, persisting, or maintaining pace because she could

manage her own money and medications, shop, complete simple tasks around her home such as cooking and doing laundry, and attend her own doctor appointments. (R. 17.) Likewise, the ALJ found that Plaintiff had mild limitations in adapting and managing herself. *Id*. While Plaintiff reported she had difficulty managing stress, the ALJ found that the record as a whole revealed Plaintiff could complete basic activities of daily living successfully and tolerate daily stressors without significant episodes of decompensation. *Id*.

The ALJ also explained her finding that Plaintiff had no social limitations due to anxiety because Plaintiff indicated she could maintain close relationships with others, talk with friends several times per month, go shopping, engage in social functions within her community, and interact appropriately with her medial providers. *Id*. In addition, reading the ALJ's decision as a whole, the ALJ further supported her finding that Plaintiff's anxiety caused no significant limitations when explaining the RFC findings. The ALJ noted that despite Plaintiff's reports of anxiety, "the medical records show that she has required only minimal treatment in the form of medications…" (R. 24). The ALJ noted Plaintiff did not require any counseling, and had no episodes of decompensation due to anxiety. *Id*.; *see* 20 C.F.R. § 404.1529(c)(3) (course and effectiveness of treatment can be considered when evaluating Plaintiff's symptoms); *see also* 20 C.F.R. § 404.1529(a) (There must be objective medical evidence from an acceptable medical source that shows Plaintiff has a medical impairment, which could reasonably be expected to produce the pain or other symptoms alleged.). In support of these "Paragraph B" findings, the ALJ cited Exhibits 1E, 4E, and 11E; Plaintiff's testimony; and the opinions of the consultative psychological examiner and both state agency reviewers. (R. 16-17, 24.)

Finally, in finding Plaintiff's mental impairments nonsevere, the ALJ also noted that the state agency psychological consultants found no more than mild limitations. (R. 23-24). The ALJ detailed that in January 2019, Russell Taylor, Ph.D., found Plaintiff had no limitations in understanding, remembering, and applying information; no limitations in interacting with others; no limitations in

5

maintaining concentration, persistence, and pace; and only mild limitations in adapting or managing herself. *Id*. In August 2019, Thomas Low, Ph.D., reviewed the record and agreed with the findings of Dr. Taylor. (R. 24.) The ALJ explained she found these opinions persuasive, as these doctors had the opportunity to review the record; the ALJ also found these opinions consistent with the record. *Id*. In support of this assertion, the ALJ cited the consistent opinion of the independent consultative psychological examiner, Dr. Grant Boyer, Psy. D., who also found that Plaintiff's anxiety caused no more than mild limitations in functioning.[3] *Id*.

Despite it being Plaintiff's burden to establish her mild mental limitations caused additional limitations, Plaintiff provides no examples of any medical evidence that supports her allegations, instead relying only on her subjective complaints. *James G. v. Saul*, 2019 WL 4305518, at *7 (N.D. Ill. Sept. 11, 2019) ("Plaintiff points to no evidence that he had any work related mental limitation other than his own endorsements…") This will not suffice as an adequate attack on the ALJ's decision; the Court cannot declare that additional mental limitations within the RFC were warranted here.

Thus, as detailed above, the ALJ provided sufficient explanation and an adequate "logical bridge" to follow regarding the inclusion of no mental limitations within the RFC assessment. The Court cannot overturn the ALJ's decision on this basis.

### 3.2  Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Physical RFC

Plaintiff next faults the ALJ's analysis of her physical RFC finding, arguing the ALJ should have limited her to, at most, sedentary work. [Dkt. 14, pp. 10-11.] The Court disagrees.

Here, the ALJ drafted a substantially supported decision that satisfied the relevant standard when she crafted Plaintiff's physical RFC by acknowledging the objective adverse findings in the record and contrasted those with Plaintiff's symptom improvement upon conservative treatment. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); 20 C.F.R. § 404.1529(c)(3)(v) (ALJ entitled

---

[3]  Drs. Taylor and Low both also cited Dr. Boyer's examination, which supported their findings Plaintiff's anxiety was nonsevere. (R. 24.)

to consider routine and conservative nature of claimant's treatment when assessing credibility); *accord Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022).

In Plaintiff's physical RFC assessment. the ALJ found Plaintiff could perform light work with some limitations, such as occasional climbing of ramps and stairs; occasional stooping, crouching, and crawling; frequent balancing; avoidance of concentrated exposure to workplace hazards such as unprotected heights and moving mechanical parts. (R. 19.)

The ALJ then explained that despite Plaintiff's allegations of knee pain, x-rays of her right knee showed no significant abnormalities. (R. 20.) In addition, the ALJ also acknowledged that imaging of the lumbar spine showed grade I anterolisthesis of the L5 and S1 with only mild disc space narrowing. *Id*. The ALJ further noted that a November 2018 examination revealed Plaintiff's knee pain resolved following taking medication (Tr. 20, 337).

As noted by the ALJ, Plaintiff continued to complain of low back pain, and began physical therapy for the same in November 2018. (R. 20.) Plaintiff's physical therapy examination revealed she was obese, and had diminished flexibility, core strength, postural dysfunction, some balance impairment, and lower extremity weakness. (R. 21.) Plaintiff also underwent a November 2018 neurosurgical evaluation with Dr. Juan Alzate, M.D. for her back pain radiating to her right leg. (R. 21, 372.) However, Plaintiff retained intact motor strength and sensation, had intact bilateral reflexes, and bilateral negative straight leg raising tests. *Id*. Dr. Alzate recommended Plaintiff continue physical therapy and taking pain medication, and that she stop smoking and follow a prescribed diet. *Id*. The ALJ further explained that Plaintiff's subsequent physical therapy records showed Plaintiff had some improvement in strength and range of motion. (R. 21.) Similarly, the ALJ also noted that after Plaintiff received lumbar spine pain injections, she reported an improvement in her pain. (R. 21-22, 489.) The ALJ even acknowledged Plaintiff's reports her pain returned several weeks after the injections. *Id*. Finally, the ALJ cited to Plaintiff's August 2020 examination with

7

Dr. Anatoly Arber, M.D., who recommended Plaintiff continue with injections and pain management. (R. 22, 489.)

In crafting her physical RFC finding, the ALJ also relied, in part, upon the findings of the state agency medical consultants. The ALJ noted that the state agency medical consultants, Dr. Richard Bilinsky, M.D., and Dr. James Hinchen, M.D., determined Plaintiff could perform a range of light work. (R. 24.) The ALJ found their opinions partially persuasive, as these doctors were able to review the record and their limitations were generally consistent with the treatment records showing that Plaintiff's physical impairments were managed with conservative treatment. *Id.*; *see* 20 C.F.R. § 404.1520c(b)(2) (supportability and consistency are the most important factors the ALJ will consider when determining the persuasiveness of an opinion). However, the ALJ indicated she added limitations in both Plaintiff's ability to crawl and to tolerate exposure to workplace hazards due to her obesity. *Id*.

Thus, the ALJ adequately explained her rationale behind limiting Plaintiff to light work with additional limitations. It was not error for the ALJ to have considered Plaintiff's conservative course of treatment when coming to this conclusion. The Court will not overturn the ALJ's decision with respect to Plaintiff's physical RFC.

### 3.3 The ALJ Adequately Assessed Plaintiff's Subjective Symptoms

Finally, Plaintiff asserts the ALJ's assessment of Plaintiff's subjective symptoms requires remand. The Court disagrees.

The ALJ's subjective symptom analysis (previously called credibility determination) is reviewed with "special deference." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). An ALJ's decision in this regard need not be flawless, and will be reversed only if is "patently wrong," which is a "high burden." *Simila*, 573 F.3d at 517; *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010); *Turner v. Astrue*, 390 Fed.Appx. 581, 587 (7th Cir. 2010). That occurs only when the

determination is "lack[ing] any explanation or support." *Jones*, 623 F.3d at 1160; *Simila*, 573 F.3d at 517.

Here, as detailed above, the ALJ cited the evidence of record and explained that no additional limitations other than what was included in the RFC were supported by the evidence. (R. 16-24.) The ALJ explained that while Plaintiff had multiple impairments that could reasonably be expected to produce some symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" were not consistent with the medical evidence and other evidence in the record. (R. 24.) The ALJ then provided a detailed decision to support her RFC finding, citing to objective medical evidence, opinion evidence, and Plaintiff's activities of daily living. (R. 16-24.)

In particular, Plaintiff argues that independent consultative psychological examiner Dr. Boyer's findings support her contentions her pain and anxiety in combination would cause her to be unable to sustain full-time work. [Dkt. 14, p. 10.] However, Plaintiff misinterprets Dr. Boyer's findings and ascribes a value to them the ALJ was not required to adopt, particularly because, as the ALJ recognized, Dr. Boyer did not opine as to what, if any, limitation in performing work activities Plaintiff had. (R. 24, 439-42.)

In January 2019, Dr. Boyer examined Plaintiff and reported that Plaintiff had a good posture and gait, and she displayed appropriate behavior. (R. 439.) Dr. Boyer acknowledged Plaintiff alleged having back pain and also noted Plaintiff reported she could complete some daily chores such as feeding her pets, cooking, and shopping. (R. 440.) Plaintiff reported she could not complete "heavy" housework, but she was able to clean up after dinner, watch television, read, and play with her cats. *Id*. Plaintiff indicated she had a good relationship with her family, enjoyed talking to friends daily, and writing poetry. *Id*. Dr. Boyer indicated Plaintiff's examination revealed she was oriented, had intact thought processes, was happy, and displayed a good mood. *Id*. Plaintiff reported having worrisome

9

thoughts three times a week due to anxiety. *Id*. However, Plaintiff had intact immediate and delayed recall; she could complete three, four, five, and six digits forward and three, four, and five digits backwards; and she had intact math skills and could repeat simple phrases. (R. 440-41.) Dr. Boyer assessed Plaintiff with, in relevant part, generalized anxiety disorder. (R. 441.) Dr. Boyer indicated Plaintiff could manage her own funds. *Id*. Dr Boyer did not offer any limitations in performing work activities he felt Plaintiff would be limited to. In fact, the ALJ highlighted how Dr. Boyer found Plaintiff "has only mild limitations in functioning secondary to anxiety." (R. 24.) The ALJ found Dr. Boyer's examination partially persuasive. (R. 23-24.)

The Court does not believe Dr. Boyer's consultative examination supports a finding that Plaintiff was unable to complete full-time work due to pain and anxiety as Plaintiff argues. [Dkt. 14, p. 10.] In short, the Court cannot say the ALJ's finding on this issue was patently wrong and will not remand on this issue.

### 3.4 The ALJ Appropriately Accounted for Plaintiff's Obesity

Finally, Plaintiff avers the ALJ failed to properly account for her obesity in the RFC assessment. The Court again disagrees.

Contrary to Plaintiff's contention, the ALJ both classified Plaintiff's obesity as a severe impairment and considered its impact, both alone and in combination with Plaintiff's other ailments. (R. 15-16, 18-19, 22, 24.) The ALJ also noted that despite being obese, Plaintiff did not require specific treatment for her obesity. (R. 22.) Thus, the ALJ fulfilled her relevant duty.[4] *See Lovelace v. Barnhart,* 187 F. App'x 639, 643 (7th Cir. 2006) (ALJ should consider obesity for its incremental effect on underlying disabilities). Moreover, the ALJ explicitly tied Plaintiff's obesity

---

[4] Not only this, but Plaintiff failed to specify how obesity affected her functioning or impaired her ability to work. *Lovelace*, 187 F. App'x at 643 (affirming ALJ where plaintiff did "not specify how his obesity in combination with any of his impairments affected his ability to work"); *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006) (adopting limitations of doctors who were aware of obesity combined with failure to articulate limitations renders any error harmless).

to her RFC's limitations on her ability to climb and to tolerate exposure to workplace hazards (which the ALJ also faulted the state agency consultative physicians for failing to consider). (R. 19, 24.) Notably, the RFC included greater limitations than those found by the state agency consultative physicians, who had considered medical records reflecting Plaintiff's obesity. *Id.*; *see Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (ALJ can account for claimant's obesity by adopting limitations suggested by reviewing doctors who were aware of it); *Prochaska*, 454 F.3d at 736-37 (same).

Accordingly, the Court finds the ALJ reasonably evaluated Plaintiff's obesity and how it affected her ability to work, and substantial evidence supports her reasoning. The Court declines to remand on this basis.

**4.    CONCLUSION**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence and contain the requisite adequate logical bridges between the evidence and her conclusion. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [dkt. 14] is DENIED and Defendant's motion for summary judgment [dkt. 17] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: SEPTEMBER 15, 2022**

_____
Susan E. Cox,
United States Magistrate Judge